[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff Angel Negron[1] brought this action to recover damages against the defendant City of New Haven for injuries he sustained and property damages he incurred pursuant to General Statutes § 13a-149[2]
as a result of an automobile collision caused by an icy street which the defendant was obligated to maintain.
On January 15, 1998, the plaintiff, with his wife and two children, drove his automobile from his home intending to attend services at Kingdom Hall Jehovah's Witnesses, a church in which he has been a member for over thirty years, located on View Street, New Haven. The plaintiff drove his automobile on various public streets to Warren Place. All the streets from his home to Warren Place were sanded and salted (sanded). At about 7:10 P.M. as his automobile ascended the hill on Warren Place and some time just before or after he reached its crest, he realized that the street was not sanded. As his automobile descended the hill on Warren Place it skidded and crashed into a guard rail at the bottom at a point where it connects with View Street as a result of the road being icy and not having been sanded.
 I
To prove a breach of statutory duty under § 13a-149, the defective roads statute, "the plaintiff must prove by a preponderance of the evidence: (1) that the highway was defective as claimed; (2) that the defendant actually knew of the particular defect or that, in the exercise of its supervision of highways in the city, it should have known of that defect; (3) that the defendant, having actual or constructive knowledge of this defect, failed to remedy it having had a reasonable time, under all the circumstances, to do so; and (4) that the defect must have been the sole proximate cause of the injuries and damages claimed, which means that the plaintiff must prove freedom from contributory negligence. Lukasv. New Haven, 184 Conn. 205, 207, 439 A.2d 949 (1981); accord Janow v.Ansonia, 11 Conn. App. 1, 2-3, 525 A.2d 966 (1987). . . . Prato v. NewHaven, 246 Conn. 638, 642, 717 A.2d 1216 (1998)." (Internal quotation marks omitted.) Ormsby v. Frankel, 255 Conn. 670, 676 (2001).[3]
 (1) Highway was defective.
The defendant does not dispute the fact that the Warren Place was defective as a result of the ice which was the cause for the collision. CT Page 9378Cairns v. Shugrue, 186 Conn. 309, 304 (1982). ("The presence of a dangerous accumulation of ice or snow unquestionably would make a highway defective within the meaning of this statute.")
(2) Actual or constructive notice of the defect.
It is clear that the defendant's obligation under § 13a-144 is to remedy the defect once it "(1) has actual notice of a specific defect; or (2) is deemed to have constructive notice of a specific defect." Ormsbyv. Frankel, supra, 255 Conn. at 676. It is a "reactive obligation, not an anticipatory obligation." Id. In other words, there is no duty on the part of the defendant to make a reasonable inspection.
In the present case the defendant had at least constructive notice of the icy conditions on Warren Place. The defendant commenced its sanding operation at 4:30 P.M. when it dispatched its trucks, approximately two hours and forty minutes before the accident. Indeed, every street the plaintiff traveled on was sanded except Warren Place where the accident occurred. The plaintiff had no warning that Warren Place was not sanded.
Ormsby v. Frankel, supra, 225 Conn. 692 is instructive. In Ormsby,
there was a finding that the defendant had 2 1/2 hours which, under the circumstances of that case, was determined to be legally sufficient to put the state on notice. In 1920, the Supreme Court of Connecticut inAaronson v. New Haven, 94 Conn. 690, 693 (1920) determined 30 minutes was sufficient.
In addition, as the prior icing conditions in Ormsby "was relevant to establish a more truncated time period than would otherwise be permitted during which the defendant should have discovered the particular icy conditions on that day;" Ormsby v. Frankel, supra, 256 Conn. at 680: it is also relevant in this case that the defendant "received facts from the weather service prior to 4:30 P.M. that the storm was on its way.[4]
Furthermore, where the defendant sanded all the streets in the path that the plaintiff took, except the one street which needed additional attention because it had an ascending hill of approximately thirteen feet and descending hill of approximately thirteen feet,[5] the evidence is overwhelming that the defendant at the very least was put on constructive notice of the icy conditions of Warren Place. Indeed, Jeffrey Pescosolido, chief of operations of the defendant's Department of Public Works testified with respect to the defendant's policies as follows: "Each and every street has at least one truck to make an initial pass on the street whether it be a snow-plowing operation or a sanding operation, so that at least each street in the beginning of a storm is covered with a layer of sand, especially the beginning of the storm. CT Page 9379 Throughout the storm periodically we would go back on those streets, but, again, the main or aterials would take most of our concentrated forces." With respect to Warren Place, two hours and forty minutes after the storm commenced and ice began to accumulate, no sand was applied.
(3) Defendant failed to remedy the defect.
It is clear that the defendant had ample time in which to remedy the defect. It had sanded the streets to Warren Place, a street that was in great need of sand because of its ascending and descending hill. Obviously, the defendant's sanding trucks were at the scene before the collision and could have easily sanded Warren Place.
(4) Defect was sole proximate cause.
The defendant suggests that the plaintiff could have taken another route to the church. This overlooks that the plaintiff was never put on notice that the streets were not sanded in the route that he took. To reiterate in the plaintiff's own words: "My street is sanded. In other words, it's in shape to go to drive because it is already sanded, and then the other street to go to my church is sanded, except when I go the street [Warren Place] in my church that area is no sand but I don't realize until I go on that street."
Once the plaintiff drove on to Warren Place and realized it was not sanded, he was trapped. He could not escape to Ridge Street, the only connecting street, because it was one way traffic" in the opposite direction. He had no alternative, but to continue. See schedule A.
The plaintiff did everything possible to avoid the collision. He testified: "To avoid hit the street from the front of the car I try to turn to the View as limited as possible. If my car turn to the View maybe it just turn to the View and that's it, you know what I mean. But the car when I turn to the View to avoid the tree the car turn and then hit the ramp over here (indicating), you know, this area. I can't avoid the accident. I tried to avoid the accident to turn to the View. If the car turn to the View maybe it just turn to the View and that's it. But it's not just — I said I don't want, you know — I try to avoid to turn to the street because that's the only way we avoid a big big accident. I tried to avoid that. I tried to avoid accident the best way I can to turn to the View, View Street."
The court finds that the defendant's failure to sand Warren Place was the sole proximate cause of the plaintiff's injuries and damages; the plaintiff was not contributorily negligent. CT Page 9380
 II
As a result of the defendant's breach of its statutory duty, the plaintiff's head was smashed against the glass window of the door and he suffered personal injuries to his head, ribs and aggravated his prior neck injuries. He was taken to Yale New Haven Hospital by an ambulance[6]
and treated in the emergency room at a cost of $309.30. He was subsequently treated on February 13, March 3 and 9, 1998 by Dr. Enrico G. Khu incurring medical expenses of $275.00. The increased pain to his neck and ribs continued for about three to four months. He continues to, as of the date of trial, have residual pain to his head.
He was incapacitated for the Friday, Saturday and Sunday following the accident, losing one day of work.
Although the cost of repairing his automobile was greater, he is only claiming $500.00, the amount not covered by insurance and $350.00 for the cost of the automobile rental while his automobile was being repaired.
Judgment may enter in favor of the plaintiff against the defendant in the amount of $5,500.00 plus costs.
Berdon, Judge Trial Referee
[EDITORS' NOTE: THE MAP IS ELECTRONICALLY NON-TRANSFERRABLE.]